# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELICA GUIA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-4294 |
| v. | : | |
| | : | |
| WORLD CDJR LLC d/b/a WORLD JEEP CHRYSLER DODGE RAM, et al., | : | |
| Defendants. | : | |

April 17th, 2019                                                                                       Anita B. Brody, J.

## MEMORANDUM

Plaintiff Angela Guia brings this action against Defendants World CDJR LLC d/b/a World Jeep Chrysler Dodge and Ram ("World"), Joseph Wajda, and Santander Consumer USA Inc. d/b/a Chrysler Capital ("Santander"). Guia purchased a used car from World, and brings various claims arising from the transaction, including fraud, breach of contract, and claims under Pennsylvania and New Jersey consumer protection laws. I exercise diversity jurisdiction over Guia's claims pursuant to 28 U.S.C. § 1332.

Defendants move to compel arbitration and to dismiss Guia's fraud and punitive damages claims.  For the reasons set forth below, I will deny Defendants' motions.[1]

---

[1] Defendants' motions to dismiss the fraud and punitive damages claims will be denied without prejudice to raise the issues at a later stage of litigation. If this matter is sent to private arbitration, these will be issues for the arbitrator. *See Certain Underwriters at Lloyd's London v. Westchester Fire Insurance Co.*, 489 F.3d 580, 585 (3d Cir. 2007) (quoting *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006)) ("'[O]nly when there is a question regarding whether the parties should be arbitrating at all' is a question of arbitrability raised for the court to resolve. 'In other circumstances, resolution by the arbitrator remains the presumptive rule.'").

1

## I. BACKGROUND[2]

In October 2017, Guia saw an advertisement online for a used 2014 Infiniti Q50 ("Infiniti") that was being sold by World, a New Jersey car dealership run by Joseph Wajda. Because Guia was interested in buying the car, Guia contacted someone at World and was told that the car was still available at the price listed in the online advertisement—$21,459.00. Based on this information, Guia traveled from her home in Philadelphia to World's location in New Jersey on October 12, 2017. While there, she met with a sales representative and took the Infiniti for a test drive. Guia then met with a World sales manager and signed the sales documents. This included two documents: a retail installment sales contract ("RISC 1") and a buyer's order ("BO 1"). These documents were signed by Guia, but were not signed by anyone from World. The transaction was financed by Santander, and Santander approved RISC 1.

A few weeks later, someone from World contacted Guia and told her that World "would have to send a dealer representative to [Guia's] home in Philadelphia, Pennsylvania to have her sign new paperwork." Compl. ¶ 20. The reason given for this was that the first set of paperwork "did not line up," meaning that "the numbers on RISC 1 did not create a uniform line down the document." Compl. ¶ 21. After this conversation, a World representative drove to Guia's home in Philadelphia and had her sign a second retail installment sales contract ("RISC 2") and a second buyer's order ("BO 2"). Both Guia and the World representative signed the documents. Although these two documents were signed in November, they were backdated to the date of the original transaction—October 12, 2017. Guia did not realize the documents were backdated until after the World representative left her home. After realizing this, Guia examined all four documents she had signed and noticed that all four documents listed different purchase prices for

---
[2] All facts are taken from Guia's Complaint, unless otherwise noted.

the Infiniti, and that all of these prices were greater than the price quoted in the online

advertisement—$21,459.00.

The various prices listed in the four documents were as follows:

| Document | Purchase Price Exclusive of Taxes and Fees | Total Purchase Price |
|---|---|---|
| RISC 1 | $22,229.00 | $38,225.76 |
| BO 1 | $21,900.00 | $28,631.84 |
| RISC 2 | $25,329.00 | $38,685.84 |
| BO 2 | $25,000.00 | $28,901.84 |

Aside from listing different purchase prices, RISC 2 was identical to RISC 1, and BO 2

was identical to BO 1. BO 1 and BO 2 both contained arbitration clauses stating, in part:

> The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. By agreeing to arbitrate, the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes.

Compl. Ex. B at 8, Compl. Ex. C at 8. Neither RISC 1 nor RISC 2 contained any arbitration

clause.

All four documents contained choice of law clauses. RISC 1 and RISC 2 stated: "Federal

law and the law of the state of our address shown on the front of this contract apply to this

contract." Compl. Ex. B at 5, Compl. Ex. C at 5. World's Shrewsbury, New Jersey address was

listed on the front of RISC 1 and RISC 2. Compl. Ex. B at 1, Compl. Ex. C at 1. BO 1 and BO 2

included the clause: "This Agreement shall be constituted under and in accordance with the laws

of the State of New Jersey." Compl. Ex. B at 10, Compl. Ex. C at 10.

## II.   LEGAL STANDARD

"[W]hether parties have agreed to submit a particular dispute to arbitration is typically an

issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters, et al.*, 561 U.S.

3

287, 296 (2010) (internal quotation marks an alterations omitted). "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.*

In deciding a motion to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). The Third Circuit has provided the following guidance on when each standard is appropriate to apply:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

*Id.* at 776 (citation omitted) (internal quotation marks omitted). "Indeed, any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted." *Id.* at 774 n.5. If a court denies a motion to compel arbitration under Rule 12(b)(6) to allow discovery on the question of arbitrability, "[a]fter limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

### III. DISCUSSION

Defendants bring their motions to compel arbitration under Rule 12(b)(6). The motions will be denied because the parties' agreement to arbitrate cannot be determined from the Complaint and its supporting documents, and can only be determined after discovery. Whether or not the parties agreed to arbitrate ultimately depends on the outcome of a choice of law

4

analysis as to whether Pennsylvania or New Jersey law applies. As will be explained below, this analysis cannot be completed without discovery on when and where the parties entered into a final contract.

The parties here signed two sets of documents, on two different occasions. First, on October 12, 2017, the parties signed two documents at the World dealership in New Jersey: a retail installment sales contract ("RISC 1") and a buyer's order ("BO 1").[3] Then, in November 2017, the parties signed a second retail installment sales contract ("RISC 2") and a second buyer's order ("BO 2"). All four documents contained choice of law provisions stating that New Jersey law would govern the contract between the parties. Only the two buyer's orders—not the two retail installment sales contracts—included arbitration clauses.

Determining whether the parties are bound by the arbitration clauses hinges on whether New Jersey or Pennsylvania law governs the contract between the parties.[4] Under New Jersey law, the fact that only the buyer's order contained the arbitration clause poses no obstacle to Defendants' motions to compel arbitration: the installment contract and the buyer's order could be considered part of one integrated contract, and the arbitration clause would be enforceable. Under Pennsylvania law, however, an arbitration clause governing a transaction like this one is only enforceable if it is in the installment contract itself, not merely the buyer's order. Defendants' motions to compel arbitration can only succeed if the Court determines that New Jersey law governs the contract between the parties.

---

[3] This first set of documents was signed by Guia, but was not signed by a representative from World.

[4] Guia does not argue dispute if the arbitration clauses in BO 1 and BO 2 were part of the contract between Guia and World, these clauses are valid and apply and Guia's claims. Therefore, the only issue before the Court is whether the contract entered into by the parties included an arbitration clause.

Although all four documents contain choice of law provisions stating that New Jersey law governed the transaction, these provisions may not be enforceable. As will be explained more fully below, a Court cannot enforce a contractual choice of law provision if doing so would violate the fundamental public policy of the state with the greater interest. *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007). Here, enforcing the choice of law provision and applying New Jersey law to the construction of the contract would be contrary to Pennsylvania's public policy. *See infra* Section III(A)(3). Therefore, the Court must look to choice of law principles to determine if Pennsylvania has a greater interest than New Jersey.

Any choice of law analysis by the Court (including an analysis of whether the choice of law provisions in the documents are enforceable) is premature, however, because the Court is missing a crucial piece of information: when did the parties actually enter into a final contract, and which contract controls this transaction? It may be that when the second set of documents were signed in Pennsylvania, a novation, or contract substitution, occurred, and the Pennsylvania documents displaced any contract formed in New Jersey. However, it may also be that the documents signed in Pennsylvania merely modified the contract formed in New Jersey, and the New Jersey contract remained in force. Finally, it is possible that the documents signed in Pennsylvania had no effect at all. Figuring out which, if any, of these scenarios occurred requires discovery into the parties' intent both when they signed the first set of documents in New Jersey and when they signed the second set of documents in Pennsylvania.

As will be discussed below, the Court cannot determine which state's law governs this transaction without knowing which contract controls the transaction. And because answering this question depends on facts not in the Complaint, the Court will deny the motions to compel arbitration under 12(b)(6).

A.  **The Outcome of the Choice of Law Analysis Depends on Facts Outside the Complaint**

Defendants argue that the choice of law provisions in the four documents should be enforced and that New Jersey law should govern the construction of the contract. In the alternative, Defendants argue that New Jersey law should govern under Pennsylvania's choice of law rules. Guia argues that, because enforcing the choice of law provision would be contrary to Pennsylvania's public policy and Pennsylvania has a greater interest than New Jersey, Pennsylvania law should govern.

Despite the choice of law provisions, the Court must still conduct a full choice of law analysis. This is because enforcing the choice of law provision would be contrary to Pennsylvania's public policy. Therefore, the Court cannot enforce this provision if Pennsylvania has a greater interest in the construction of the contract than New Jersey.

A district court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 1021-22 (1941). Pennsylvania's choice of law analysis consists of three steps. First, the court determines whether there is an "*actual* or real conflict between the potentially applicable laws" of Pennsylvania and New Jersey. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). Second, the court "examine[s] the governmental policies underlying each law, and classif[ies] the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id*. Third, the court "must then determine which state has the 'greater interest in the application of its law.'" *Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

   1.  **There is an actual conflict between New Jersey and Pennsylvania law**

"[T]he first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws." *Hammersmith*, 480 F.3d at

7

230. If there is no actual conflict, "a choice of law analysis is unnecessary." *Id*. Here, there is an actual conflict between applicable Pennsylvania and New Jersey law. While Pennsylvania law requires that an arbitration clause be in a retail installment sales contract, New Jersey law has no such requirement.

The Pennsylvania Motor Vehicle Sales Financing Act (MVSFA) provides that "an installment sale contract shall . . . contain all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold." 12 Pa. Cons. Stat. § 6221(a). This means that if a purchaser of a vehicle via an installment sale signs both a retail installment sales contract and a buyer's order, the buyer's order is subsumed by the sales contract. If only the buyer's order—and not the sales contract—contains an arbitration clause, that arbitration clause is unenforceable. *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 305 (E.D. Pa. 2016); *Walker v. Metro Auto Sales Inc.*, No. 254 EDA 2013, 2014 WL 10937074, at *3 (Pa. Super. Ct. April 7, 2014); *Knight v. Springfield Hyundai*, 81 A.3d 940, 948-49 (Pa. Super. Ct. 2013).

Under New Jersey law, by contrast, an arbitration clause that is present in only the buyer's order, but not the retail installment sales contract, may be enforceable. *See, e.g. Stollsteimer v. Foulke Mgmt. Corp.*, No. A-1182-17T3, 2018 WL 3117214, at *3 (N.J. Super. Ct. App. Div. June 26, 2018) (finding that a retail installment sales contract, "motor vehicle retail order agreement," and arbitration agreement constituted a "single, integrated contract" governing a vehicle sale, and enforcing the arbitration agreement). *Cf. Waller v. Foulke Mgmt. Corp.*, No. 1:10-cv-06342 (NLH), 2011 WL 3611405, at *5-7 (D.N.J. Aug. 11, 2011) (finding that a separate "Arbitration Agreement" superseded an arbitration clause in the retail installment sales contract and was binding on the plaintiff); *Griffin v. Burlington Volkswagen, Inc.*, 988 A.2d 101, 103-104 (N.J. Super. Ct. App. Div. 2010) (enforcing an arbitration clause found in the "retail

order agreement" accompanying a car sale). Plaintiff concedes that, under New Jersey law, the arbitration clause could be enforced. Pl.'s Br. in Opp. at 10.

Here, only the buyer's orders—and not the retail installment sales contracts—contained arbitration clauses. Under New Jersey law, the buyer's order and retail installment sales contract could be considered a single, integrated contract, and the arbitration clause would be enforceable. But under Pennsylvania law, the arbitration clause would not be enforceable, because it was not in either retail installment sales contract. Thus, there is an actual conflict between Pennsylvania and New Jersey law.

### 2. The conflict is true

"If there are relevant differences between the [state] laws, then the court should examine the governmental policies underlying each law, and classify the contract as a 'true,' 'false,' or an 'unprovided-for' situation. *Hammersmith*, 480 F.3d at 230. "[I]f *both* jurisdictions' interests would be impaired by the application of the other's laws," then there is a true conflict and a "deeper choice of law analysis is necessary." *Id*. (internal quotation marks and alterations omitted).

Here, there is a true conflict because both Pennsylvania and New Jersey have interests that would be impaired by the application of the other's laws. Pennsylvania has a consumer protection interest in ensuring that its citizens are protected by the MVSFA—including the provision requiring that an arbitration clause be in a retail installment sales contract—when Pennsylvania citizens enter into motor vehicle financing contracts. New Jersey has an interest in protecting the justified expectations of its businesses that New Jersey law will govern their contracts.

### 3. The choice of law provision may not be enforceable

The choice of law provisions in all four documents do not resolve the conflict of law question, because they may not be enforceable. "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)). Pennsylvania courts have adopted Section 187 of the Restatement (Second) Conflict of Laws. *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) (citing *Kruzits*, 40 F. 3d at 55); *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 948 A.2d 752, 757–58 (Pa. 2008). Section 187 directs courts to enforce parties' choice of law provisions unless:

> either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts § 187.

Here, New Jersey does have a substantial relationship to the parties and to the transaction: World was located there, the car was located there, and RISC 1 and BO 1 were signed there. However, enforcing the choice of law provision would be contrary to a fundamental policy of Pennsylvania. The Pennsylvania Motor Vehicle Sales Financing Act (MVSFA), the law requiring arbitration clauses to be in retail installment sales contracts, explicitly states:

> A buyer's waiver of the provisions of this chapter, including any purported waiver effected by a contractual choice of the law of another jurisdiction contained in an installment sales contract, shall be deemed contrary to public policy and is void and unenforceable.

12 Pa. Con. Stat. § 6234. This means that if enforcing a contract's choice of law provision would result in a waiver of the protections of the MVSFA, this would be contrary to Pennsylvania's public policy. This is precisely what would happen if the choice of law provision were enforced here, and New Jersey law was applied to the contract. As discussed above, the MVSFA states that an arbitration clause *must* be in a retail installment sales contract to be enforceable. New Jersey law, by contrast, allows the enforcement of an arbitration clause that, like the arbitration clause in this case, is only in a buyer's order. Thus, applying New Jersey law to the contract would amount to a waiver of the MVSFA requirement that an arbitration clause be in a retail installment sales contract, and would be contrary to Pennsylvania's public policy.

Because enforcing the choice of law provision and applying New Jersey law would be contrary to a fundamental policy of Pennsylvania, the Court cannot enforce the choice of law provision if (1) Pennsylvania has a materially greater interest than New Jersey in the construction of the contract between Guia and Defendants, and (2) applying Pennsylvania's choice of law rules would result in a finding that Pennsylvania law govern the contract. In essence, the Court must proceed to the third step of Pennsylvania's choice of law analysis and determine which state has the greater interest in the application of its law. *See Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 623-24 (3d Cir. 2009).

### 4. Which state has the greater interest cannot be determined from the face of the Complaint

Pennsylvania's choice of law methodology combines the "significant relationship" approach, which looks to the contacts each state has with the controversy, and the "interests analysis" approach, which is a "'qualitative appraisal of the relevant States' policies with respect to the controversy.'" *Hammersmith*, 480 F.3d at 231 (quoting *Melville v. Am. Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)). A court must "'weigh the contacts on a qualitative

scale according to their relation to the polices and interest underlying the [particular] issue.'" *Id*. (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)). To identify the relevant contacts, Pennsylvania courts look to Restatement (Second) of Conflicts § 188(2). *Id*. at 233. Section 188(2) instructs courts to consider: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) and the domicile of the parties. Restatement (Second) of Conflicts § 188(2).

The Court is unable to weigh these contacts without determining which contract actually controls the transaction: the documents signed in New Jersey, or the documents signed in Pennsylvania. For example, one of the contacts the Court must consider is the place of contracting, which is "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding affect." Restatement (Second) of Conflicts § 188 cmt. e.  The Court must also consider the place of negotiation, which is "the place where the parties negotiate and agree on the terms of their contract." *Id*. Without knowing when and where the parties entered into a final contract, the Court cannot assess these contacts.

Figuring out which contract controls the transaction requires facts not in the Complaint. According to the Complaint, a World representative told Guia that she needed to sign a new contract because the formatting on the first contract was incorrect, and that the second contract was otherwise identical to the first. In reality, however, RISC 2 and BO 2 both listed higher prices than RISC 1 and BO 1. Taking these facts as true, it is not apparent whether the parties intended for the documents signed in Pennsylvania to serve as a new contract extinguishing any former contract, to modify the terms of the previous contract, or neither.[5] Because discovery is needed on this issue, the Motions to Compel Arbitration will be denied.

---

[5] Under both Pennsylvania and New Jersey law, novation, or contract substitution, requires the consent of the parties to substitute a new contract. *See Wells Reit II—80 Park Plaza, LLC v. Director, Div. of*

## IV. CONCLUSION

The Motion to Compel Arbitration cannot be decided under the Rule 12(b)(6) standard and will be denied. In order to decide whether the arbitration clause was part of the contract between the parties, the Court must first determine whether Pennsylvania or New Jersey law governs the construction of the contract. The Court must consider whether the choice of law provisions in the documents signed by the parties are enforceable and, if the provisions are not enforceable, must apply Pennsylvania's choice of law rules to determine which state law governs. The Court cannot conduct either of these analyses at this point, however, because both analyses require the Court to weigh the contacts each state had with the contract. This is impossible without knowing when and where the parties entered into a final contract, and determining this will require discovery on whether the parties intended for the documents signed in Pennsylvania to supplant or modify any contract formed between the parties in New Jersey. The Court will hold a conference to discuss further procedure.

    s/Anita B. Brody
    ANITA B. BRODY, J.

Copies **VIA ECF 4/17/2019**

---

*Taxation*, 999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010); *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486–87 (Pa. Super. Ct. 1984) (internal quotation marks omitted). "Whether there is a novation is ordinarily a question of fact." *Am. Acceptance Corp. v. Scott Hous. Sys., Inc.*, 630 F. Supp. 70, 75 (E.D. Pa. 1985). A contract modification also requires mutual assent. *Wells Reit II*, 999 A.2d at 497; *Shedden v. Anadarko E. & P. Co., L.P.*, 136 A.3d 485, 490 (Pa. 2016).